Filed 10/19/23  P. v. Rombeau CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL ROMBEAU,<br><br>    Defendant and Appellant. | B323493<br><br>(Los Angeles County<br> Super. Ct. No. LA076805) |

APPEAL from an order of the Superior Court of Los Angeles County, Terrance T. Lewis, Judge.  Reversed and remanded with instructions.

Christopher Lionel Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Defendant Michael Rombeau came with his parents to the United States from France as an infant; while a legal resident, he never became a citizen. In 2013, Rombeau pleaded a combination of guilty and no contest to drug possession offenses in two separate cases. In 2014, Rombeau pleaded no contest to a charge of possession for sale of cocaine base (Health & Safety Code, § 11351.5) following a negotiated plea. Shortly after his 2014 conviction, federal immigration authorities removed Rombeau to France.

In 2022, Rombeau sought to vacate his three prior convictions based on claims that he was mistaken about the immigration consequences of his pleas when he entered them. The superior court vacated both of the 2013 convictions; the validity of those vacaturs is not at issue in this appeal. The court declined, however, to vacate Rombeau's 2014 plea pursuant to Penal Code[1] section 1473.7, subdivision (a)(1), which permits a court to reach back and vacate a past conviction that is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction." It found the trial court in 2014 had advised Rombeau of the immigration consequences of that plea before Rombeau entered it, and thus Rombeau's claim of mistake was not credible.

Rombeau now appeals the court's denial of his request to vacate his 2014 plea. Rombeau does not dispute that the court advised him of the immigration consequences of that plea before

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

he entered it or that he understood the court's admonition when it was given. He instead argues he misunderstood based on his counsel's advice that his two 2013 pleas—both of which were found to be invalid in 2022 based on defects that existed at the time of those 2013 pleas—made his removal from the United States a foregone conclusion. Under the mistaken impression that he would be removed based on these prior 2013 convictions no matter what, Rombeau pleaded guilty in 2014 to minimize the time he would spend incarcerated before he was sent to France.

We conclude that at the time Rombeau entered his 2014 plea, he mistakenly believed his 2013 pleas made his removal a certainty, which in turn damaged his ability to meaningfully defend against the adverse immigration consequences of the 2014 charge. As Rombeau has established a reasonable probability that but for these errors he would not have entered the 2014 plea, we reverse.

## BACKGROUND

### A. Criminal History

#### 1. *The 2013 Felony Deferred Entry of Judgment Case*

A complaint filed on April 23, 2013, charged Rombeau with felony possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 1), felony possession of a controlled substance (*id*., § 11350, subd. (a); count 2), misdemeanor battery against a spouse (§ 243, subd. (e)(1); count 3), felony assault likely to produce great bodily injury (§ 245, subd. (a)(4); count 4), and felony false imprisonment (§ 236; count 5).

According to Rombeau, prior to a June 19, 2013 hearing, his defense counsel advised him of a plea offer that included a

3

deferred entry of judgment (DEJ) under section 1000 et seq.[2] "[I]t was [Rombeau's] understanding that if [he] completed DEJ[, his] plea could not be used against [him] for any purpose whatsoever. [He] was not told that [his] failure to complete DEJ would result in [his] deportation. [He] was unaware that, regardless of whether [he] completed DEJ, [his] plea to [c]ount 1 made [his] deportation mandatory."

The docket indicates that at the June 19, 2013 hearing, the trial court provided several advisements to Rombeau, including an immigration advisement that "If you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged will have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Rombeau claims no such advisement was in fact made, and that such advisements were typically not given in connection with DEJ pleas at the time because they were thought to be immigration safe. Although Rombeau did not designate the reporter's transcript for the June 19, 2013 hearing as part of the record on appeal, as part of the 2022 post-conviction proceedings the superior court vacated the DEJ plea pursuant to section 1016.5, thus impliedly finding the 2013 court did not in fact properly advise Rombeau about the immigration consequences of the DEJ plea.[3]

---

[2] Section 1000 et seq. permits a trial court to divert from the normal criminal process first-time drug offenders who are found to be suitable for treatment and rehabilitation. (See *People v. Barrajas* (1998) 62 Cal.App.4th 926, 928.)

[3] Section 1016.5, subdivision (a) requires that "[p]rior to acceptance of a plea of guilty or nolo contendere . . . , the court

Rombeau then pleaded guilty to counts 1 and 3. The trial court dismissed the other counts, placed Rombeau on DEJ for at least 18 months as to count 1, suspended the imposition of sentence as to count 3, and imposed certain restitution fines. The trial court ordered Rombeau to cooperate with his probation officer in a plan for drug abuse counseling and scheduled a DEJ progress report for December 19, 2013.

On December 19, 2013, Rombeau failed to provide proof of enrollment in a DEJ program. The court did not cancel the DEJ program; instead, it continued the progress report hearing to February 19, 2014.

2.      *The 2013 Misdemeanor Possession Case*

On December 13, 2013, Rombeau was charged with misdemeanor possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). According to Rombeau, his attorney discussed a plea offer with him, but "[t]here was no discussion regarding the actual immigration consequences that would result." He "was unaware that a plea to a violation of [Health and Safety Code section] 11377 would make deportation mandatory."

According to the docket, at Rombeau's December 27, 2013 arraignment, the trial court advised him that his conviction "will have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization." As discussed

shall administer the following advisement on the record to the defendant:  [¶]  If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

below, the People later stipulated, and the superior court found, that no proper advisement about the immigration consequences of the 2013 misdemeanor plea was in fact given to Rombeau. Rombeau pleaded nolo contendere to the charge. The court placed him on summary probation for 24 months, sentenced him to 12 days in county jail, and credited him with 12 days of custody credits.

### 3. *The 2014 Felony Possession for Sale Case*

On February 6, 2014, police officers responded to a report of domestic violence. When they arrived, they observed a baggie of methamphetamine, a scale, numerous empty baggies, a Brillo pad, and a cell phone on which they found evidence of drug sales. When asked if he had anything illegal on his person, Rombeau reached into his buttocks area to remove multiple baggies of narcotics before throwing them on the ground.

On February 10, 2014, a felony complaint charged Rombeau with possession for sale of cocaine base (Health & Saf. Code, § 11351.5; count 1) and possession of methamphetamine for sale (*id.*, § 11378; count 2). The complaint alleged the total sentence for the charges ranged between four years four months to eight years.

Rombeau later declared that prior to entering his plea in this matter, his trial counsel advised him that there was an immigration hold placed on him and that he was already subject to mandatory deportation due to his 2013 pleas, "so there was no point in fighting the case and [he] should just seek a lesser sentence." Rombeau claimed, "Had I known that the prior pleas were legally invalid, I would have rejected the proposed plea . . . and would have insisted that my attorney pursue an immigration-safe plea, and if no such plea could be obtained, I

6

would have gone to trial in hopes of preserving my ability to remain in the United States"; "If I had known that deportation could have been avoided, I would have gone to any length in order to do so"; Rombeau repeated that "If an immigration safe plea could not be obtained, I would have proceeded to trial if that was my only hope of remaining in the [United States]."

At the February 21, 2014 preliminary hearing, the trial court noted that a negotiated plea had been reached and asked Rombeau, "have you had enough time to discuss the case with your attorney, including any and all possible defenses to the charges, what your rights are, as well as the consequences of your plea?" Rombeau responded yes. Rombeau confirmed that he wanted to enter a no contest plea as to count 1 with a disposition of a three-year period of probation and 120 days in county jail. The court then referred to a felony advisement of plea form and asked Rombeau if he had initialed and signed the form. Rombeau confirmed he had, and his counsel confirmed he had also signed the form. Item 12 on the form which Rombeau initialed, stated, "Immigration Consequences – I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty." Rombeau also confirmed that he read the form, went over the form "in detail" with his attorney, in fact understood all waivers and consequences of his plea, and that he waived and gave up his rights. The court and Rombeau then had the following colloquy:

"The court: If you are not a citizen of the United States, this conviction will have the consequence of deportation, removal exclusion from admission to the United States, denial of reentry

7

and denial of naturalization as well as denial of amnesty pursuant to the United States law.  Do you understand that?

"The defendant:  Yes, sir."

The trial court then asked Rombeau and his counsel several questions to ensure Rombeau entered into his plea voluntarily and knowingly.  Rombeau pleaded no contest to count 1.

The trial court suspended the imposition of Rombeau's sentence and placed him on probation for three years on the condition that he serve 120 days in county jail.  It also terminated the DEJ in the 2013 case due to Rombeau's violation of that program based upon his plea.  It ordered that upon Rombeau's release from county jail, Rombeau was to enroll in a Proposition 36 program.[4]  As to the 2013 misdemeanor case, the trial court revoked probation due to his plea and reinstated it on the same terms and conditions.

## B.    Rombeau Is Removed

After completing his jail sentence, Rombeau was transferred to an immigration detention center.  On March 19, 2014, the United States Department of Homeland Security issued a notice to appear in removal proceedings, alleging that Rombeau was removable because he had been convicted of possession for sale of cocaine base in violation of Health and Safety Code section 11351.5.  On April 8, 2014, an immigration court ordered that

---

[4] " 'Proposition 36 mandates probation and diversion to a drug treatment program for those offenders whose illegal conduct is confined to using, possessing, or transporting a controlled substance.' " (*People v. Zeigler* (2012) 211 Cal.App.4th 638, 655.)

Rombeau be removed to France. On June 24, 2014, Rombeau was removed.

## C. The Legislature Enacts Laws to Aid Noncitizen Defendants Who Did Not Meaningfully Understand the Immigration Consequences of Their Pleas

After Rombeau's removal to France, the Legislature enacted and amended statutes to ensure noncitizen defendants "receive clear and accurate advice about the impact of criminal convictions on their immigration status, along with effective remedies when such advice is deficient." (*People v. Vivar* (2021) 11 Cal.5th 510, 516.)

### 1. *Section 1203.43*

In 2015, the Legislature passed section 1203.43, effective January 1, 2016. (Stats. 2015, ch. 646, § 1.) Section 1203.43's purpose was to remedy misinformation about DEJ dispositions, including their potential immigration consequences. The Legislature expressly recognized that its prior statement in section 1000.4 that " 'successful completion of a [DEJ] program shall not . . . be used in any way that could result in the denial of any . . . benefit . . .' constitutes misinformation about the actual consequences of making a plea in the case of some defendants, including all noncitizen defendants, because the disposition of the case may cause adverse immigration consequences . . . ." (§ 1203.43, subd. (a)(1).) The Legislature accordingly "declare[d] that based on this misinformation and the potential harm, the defendant's prior plea is invalid" (*id.*, subd. (a)(2)) and provided a method by which defendants may withdraw such a guilty or nolo contendere plea. (*Id.*, subd. (b).)

9

2.   *Sections 1016.2 and 1016.3*

The Legislature also enacted sections 1016.2 and 1016.3, effective January 1, 2016 (Stats. 2015, ch. 705, §§ 1 & 2), to codify federal and state case law holding that defense counsel must "provide affirmative and competent advice to noncitizen defendants regarding the potential immigration consequences of their criminal cases" and "must investigate and advise regarding the immigration consequences of the available dispositions, and should, when consistent with the goals of and informed consent of the defendant, and as consistent with professional standards, defend against adverse immigration consequences." (§ 1016.2, subd. (a); see § 1016.3, subd. (a).)

These sections supplemented section 1016.5, which existed as of the time of Rombeau's various pleas.  Section 1016.5 requires that prior to accepting a plea a court must advise the defendant that such a plea may have immigration consequences (§ 1016.5, subd. (a)), and provides as relevant here that if "the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (*Id.*, subd. (b).)

3.   *Section 1473.7*

In 2016, the Legislature passed section 1473.7, effective January 1, 2017.  (Stats. 2016, ch. 739, § 1.)  Under subdivision (a)(1) of section 1473.7, a person no longer in custody can seek to

10

vacate a prior conviction that is "legally invalid" due to "prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences." (*Ibid*.)  In 2018, the Legislature amended section 1473.7, effective January 1, 2019, "to provide clarification to the courts regarding [s]ection 1473.7 . . . to ensure uniformity throughout the state and efficiency in the statute's implementation."  (Assem. Bill No. 2867 (2017-2018 Reg. Sess.) § 1(b).)  The amendments included that, "There is a presumption of legal invalidity . . . if the moving party pleaded guilty or nolo contendere pursuant to a statute that provided that, upon completion of specific requirements, the arrest and conviction shall be deemed never to have occurred . . . ."  (§ 1473.7, subd. (e)(2); Stats. 2018, ch. 825, § 2.)  The Legislature also enacted amendments to clarify that "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."  (§ 1473.7, subd. (a)(1).)  The amendments also provided, "When ruling on a motion under paragraph (1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. . . ."  (*Id.*, former subd. (e)(4).)

Section 1473.7, including these later amendments, applies retroactively.  (See *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 309, 311 [applying § 1473.7 to a plea made 15 years earlier]; *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1066 [the 2018 amendments "made it easier to retroactively challenge

11

convictions based on the ground that the defendant was not properly advised of the immigration consequences"]; see also *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 976 [applying § 1473.7 to a plea made 17 years earlier and stating, "[a]s explained in the report of the Senate Committee on Public Safety when considering the bill that became former [§] 1473.7 [citation], the purpose of the legislation was to 'fill a gap in California criminal procedure' [citation] by providing a means to challenge a conviction by a person facing possible deportation who is no longer in criminal custody and thus for whom a petition for a writ of habeas corpus is not available"].)

As explained in *People v. Camacho* (2019) 32 Cal.App.5th 998, "even if [a section 1473.7] motion is based upon errors by counsel, the moving party need not also establish a Sixth Amendment violation as by demonstrating that 'counsel's representation "fell below an objective standard of reasonableness" ' ' ' "under prevailing professional norms," ' as stated in *Padilla*[ *v. Kentucky* (2010)] 559 U.S. [356] at pages 366, 368-369, . . . quoting *Strickland* [*v. Washington* (1984)] 466 U.S. [668] at pages 688, 694 . . . ." (*People v. Camacho, supra*, at p. 1008.) Instead, "the focus of the inquiry in a section 1473.7 motion is on the 'defendant's own error . . . .' " (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871, italics omitted; see also *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1176 ["in deciding whether the defendant has shown error, the focus of our inquiry is on the defendant's own error in misunderstanding the immigration consequences of the plea"].)  "[A] petitioner's own subjective error qualifies for relief under the statute if the evidence shows he or she misunderstood the immigration consequences of a plea deal." (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 769.)

12

**D.    Rombeau Moves to Vacate His Convictions**

    1.    *The Parties' Filings*

On May 4, 2022, Rombeau filed a motion to vacate his 2014 felony plea pursuant to section 1473.7.  Rombeau and his then-current counsel filed declarations in support of his motion.  The declarations attached the dockets in the 2013 DEJ matter, the 2013 misdemeanor case, and the 2014 felony plea, documents relating to the federal procedures to remove him from the United States, and supporting letters from Rombeau's mother and brother.  Rombeau also filed separate motions to vacate his pleas in the 2013 DEJ matter and the 2013 misdemeanor case.  Neither motion relating to the 2013 convictions is included in the record.

Rombeau declared that he was born in France in 1982.  When he was a few months old, he and his parents moved to Hollywood, California.[5]  When he was four years old, he obtained legal permanent resident status.  His two younger brothers were born in the United States.  In 1999, he graduated from high school in Southern California and began working.  In 2004, his mother became an American citizen and encouraged him to do the same.  Rombeau delayed doing so.  In February 2007, his son was born.  In 2012, his youngest brother died.  Rombeau became depressed and began to abuse drugs.

Rombeau further declared that having only lived in France for a few months as an infant, he did not know anyone in France when he was deported there in June 2014.  He had no place to live, and he could not read or write French.  He stated that he has not been able to maintain a relationship with his son, now 16

---

[5] A letter from Rombeau's mother states that his parents brought him to the United States when he was two years old.

years old, because his son's mother would not permit Rombeau to speak with him and his only connection to his son is through his brother who stays in touch with his son.

Rombeau's motion argued that "[d]ue to legally invalid pleas in two prior cases . . . , [he] was under the mistaken belief that, at the time of the plea in this matter, he was already subject to mandatory deportation as conveyed to him by his attorney." As to his 2013 plea in the DEJ matter, Rombeau contended that in enacting section 1203.43, the Legislature acknowledged that noncitizens like him had been misinformed that DEJ pleas did not have immigration consequences. Thus, his 2013 DEJ plea was "legally invalid." (See § 1203.43, subd. (a)(2) [declaring prior DEJ pleas "invalid"].) As to the 2013 misdemeanor case, Rombeau argued that neither his trial counsel nor the court advised him as required of the immigration consequences of his plea. Rombeau concluded that under case law "the focus is on a 'defendant's own error.' " (*People v. Mejia*, *supra*, 36 Cal.App.5th at p. 871, italics omitted.)

The People opposed Rombeau's motion and appended Rombeau's 2014 executed felony advisement of rights, waiver, and plea form to their opposition. Neither Rombeau nor the People obtained a declaration from any attorney that represented Rombeau during the 2013 or 2014 pleas.

2.    *The Stipulation to Vacate Rombeau's 2013 Misdemeanor Conviction*

On June 3, 2022, the People and Rombeau stipulated to allow Rombeau to withdraw his plea in the 2013 misdemeanor case as "legally invalid" because Rombeau "did not have a full and complete understanding of the consequences of the plea at the time of his original plea." The superior court accepted the

14

stipulation, permitted Rombeau to withdraw his plea, and sentenced Rombeau on an amended count.  In connection with accepting the stipulation, the superior court signed an order vacating Rombeau's conviction pursuant to sections 1016.5, subdivision (b) and 1473.7, subdivision (a)(1).

3.     *The Hearing on Rombeau's Motions to Vacate the 2013 Felony Conviction and the 2014 Felony Conviction*

On July 8, 2022, the court heard Rombeau's motions to vacate the 2013 DEJ plea and the 2014 felony plea.  Rombeau, who remains in France, was not present.  Rombeau's counsel argued that at the time Rombeau pleaded guilty in 2013, defendants were misinformed as to the consequences of a DEJ plea.  Counsel further represented that the waiver in the 2013 DEJ plea did not contain mandatory immigration advisement; rather, it included only a conditional advisement that "you could be" deported instead of stating "you will be deported."  Counsel claimed "[t]he transcript from the plea hearing indicates that no advisement was given on the record.  The court's docket stated incorrectly."  "There would have been no reason to give him the advisement at that point in time, because there was the widespread belief that DEJ was a viable option for noncitizens."  Counsel also observed that the plea in the 2013 misdemeanor case had been vacated.  Counsel then argued that Rombeau's basis for taking the plea in the 2014 case "was because he was told that he was already going to be deported, so there was no reason for him to fight the charges in the case.  As a result of that, he accepted the plea" because "[h]e was misinformed about the consequences of his plea."

15

After hearing from the People and additional arguments from Rombeau's counsel, the superior court asked, "How do you get around in the most recent case, he is informed that he initialed, he signed and he said immigration consequences, number[ ] 12, I understand that I am not a citizen of the United States. I must expect my plea of guilty or no contest will result in deportation, exclusion from admission or reentry into the United States and denial of naturalization or amnesty. Anything else? Or do you want to submit?" Counsel submitted.

The superior court granted Rombeau's motion to vacate the 2013 DEJ plea under sections 1016.5 and 1473.7, subdivision (a)(1). The court denied the motion to vacate the 2014 felony plea.

## DISCUSSION

The superior court vacated both the 2013 misdemeanor plea and the 2013 DEJ plea pursuant to sections 1016.5 and 1473.7. Neither party appealed these orders. Thus, we address only whether the court should have vacated the 2014 felony plea.

## A.    Legal Principles and Standard of Review

With regard to the 2014 felony plea, "section 1473.7 allows noncitizens who have served their sentences to vacate a conviction if they can establish by a preponderance of the evidence that their conviction is 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' [Citations.] To establish prejudicial error, a defendant must demonstrate a 'reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood

16

its actual or potential immigration consequences' [citation] and must corroborate any assertions with ' " 'objective evidence' " ' [citation]." (*People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*).)

On appeal, section 1473.7 motions are subject to independent review. (*People v. Vivar*, *supra*, 11 Cal.5th at pp. 524-528.) " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.]" (*Id*. at p. 527.) Independent review is not the equivalent of de novo review. (*Ibid*.) "An appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Ibid*.) "Where, as here, the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528, fn. omitted.)

## B.      Rombeau Has Demonstrated Error Affecting His Ability to Meaningfully Understand or Defend Against the Immigration Consequences of the 2014 Felony Plea

Rombeau argues that at the time of his 2014 felony plea, he mistakenly believed, based upon his counsel's advice, that due to his 2013 convictions, his removal from the United States was a forgone conclusion. He contends he did not realize at the time he

17

was considering the 2014 plea that his earlier pleas were then subject to challenge. While the People attempt to characterize this claim as an ineffective assistance of counsel argument, Rombeau does *not* claim he received ineffective assistance of counsel in connection with his 2014 plea. As stated above, Rombeau does not need to demonstrate ineffective assistance of counsel to obtain relief; his own error suffices. (See *People v. Mejia, supra*, 36 Cal.App.5th at p. 871.)

The record demonstrates that Rombeau's analysis of whether to accept the 2014 felony plea depended upon his misunderstanding that he would be deported based on his prior convictions regardless of what he chose to do in the 2014 case. As shown by the later vacatur of both 2013 pleas under section 1016.5—which was in effect at the time of his pleas—it was not a fait accompli that Rombeau would be deported based solely on those convictions.[6] This demonstrates Rombeau mistakenly understood that the 2013 convictions foreclosed his ability to avoid deportation when he agreed to the 2014 plea bargain, when in fact those pleas were subject to challenge at the time of his 2014 plea. The court's advisement during the 2014 plea colloquy did not clear up this mistake, as the misunderstanding was based on the 2013 convictions making the immigration consequences of the 2014 plea cumulative rather than the 2014 plea alone leading to deportation.

---

[6] When evaluating a claim under section 1473.7, the key "is the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken." (*People v. Mejia, supra*, 36 Cal.App.5th at p. 866.)

Further, imposing upon Rombeau continuing consequences from his now vacated pleas in the 2013 DEJ and misdemeanor matters is contrary to the legislative purpose of sections 1016.5, 1203.43, and 1473.7. Thus, we conclude Rombeau has demonstrated his 2014 felony plea was contemporaneously based on errors that prevented him from meaningfully understanding and defending against the immigration consequences of that plea.[7]

## C. Rombeau Has Demonstrated Prejudice

In addition to showing an error that "damaged his 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea of . . . nolo contendere,' " a defendant must also show the error "to be prejudicial." (*People v. Camacho*, *supra*, 32 Cal.App.5th at p. 1009.) This prejudice test differs from the one for ineffective assistance of counsel, which requires a "reasonable probability of a different outcome in the original proceedings absent the error." (*Ibid*.) Instead, to establish prejudice for purposes of section 1437.7, "a defendant must demonstrate a 'reasonable probability that [he or she] would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences' [citation] and must corroborate any assertions with ' " 'objective evidence' " '

---

[7] Having so concluded, we need not address Rombeau's alternative arguments regarding alleged misunderstandings of the immigration consequences of his 2014 felony plea.

[citation]."[8]  (*Espinoza*, *supra*, 14 Cal.5th at p. 316.)  "Reasonable probability" does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.  (*People v. Soto* (2022) 79 Cal.App.5th 602, 610; *People v. Rodriguez, supra*, 68 Cal.App.5th at p. 324.)  Therefore, " 'reversal is required when there exists "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result." ' "  (*People v. Rodriguez, supra*, at p. 324, quoting *People v. Mar* (2002) 28 Cal.4th 1201, 1225; see *People v. Watson* (1956) 46 Cal.2d 818, 836-837.)

"[T]he inquiry under section 1473.7 requires consideration of the 'totality of the circumstances,' which necessarily involves case-by-case examination of the record [citation], and no specific kind of evidence is a prerequisite to relief."  (*Espinoza, supra*, 14 Cal.5th at p. 325.)  "Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible."  (*People v. Vivar, supra*, 11 Cal.5th at pp. 529-530.)

"Ties to the United States are an important factor in evaluating prejudicial error under section 1473.7 because they shed light on a defendant's immigration priorities."  (*Espinoza, supra*, 14 Cal.5th at p. 321.)  Here, Rombeau demonstrated deep

_____

[8] "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced."  (*Espinoza, supra*, 14 Cal.5th at p. 321.)

and longstanding ties to the United States. He came here as a very young child and became a legal permanent resident when he was four years old. He lived in the United States for nearly his entire life before he was removed. His entire family continues to live here, including his son, mother, and brother. Each of them is a United States citizen. Before he was removed, he had been employed and was supporting his son. His mother and brother submitted letters describing that they miss him and that since his absence, Rombeau's brother has also had a son and a daughter. In contrast, at the time of his removal, he had no ties to France and did not speak or read French. (See *People v. Lopez* (2022) 83 Cal.App.5th 698, 714 ["[the] factors courts may consider in determining the reasonable probability that the defendant would have rejected the plea because of immigration consequences include: the defendant's remaining ties or lack thereof to his or her home country"].) Thus, Rombeau's ties to the United States (and lack of ties to France) weigh heavily in favor of finding prejudice.

In *Espinoza*, our Supreme Court explained, "Another consideration is whether alternative, immigration-safe dispositions were available at the time of the defendant's plea. Factors relevant to this inquiry include the defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's charging policies with respect to immigration consequences, and the existence of comparable offenses without immigration consequences." (*Espinoza, supra*, 14 Cal.5th at p. 323.) In that matter, "Espinoza had no prior criminal history at the time of his plea. This fact is relevant because a defendant without an extensive criminal record may persuasively contend

21

that the prosecutor might have been willing to offer an alternative plea without immigration consequences. [Citation.] [¶] Additionally, Espinoza presented evidence from an immigration attorney that there were alternatives the prosecution could have offered that would not have resulted in mandatory deportation." (*Id*. at p. 324.) Thus, Espinoza demonstrated "that a plea deal without immigration consequences 'would or could have been negotiated' [citation]." (*Ibid*.)

Rombeau argues he "could have hoped for or expected to be able to negotiate a plea bargain with a better immigration outcome." However, unlike the defendant in *Espinoza*, he does not provide any evidence to support this conclusion,[9] and our independent review of the record leads us to conclude this factor weighs against a finding of prejudice. Indeed, with respect to the 2014 charges for possession for sale of narcotics, the police found Rombeau with multiple drug baggies secreted on his person, drugs and drug sale paraphernalia in the motel room where he

---

[9] Rombeau's appellate briefing argues that he could have bargained for comparable offenses without immigration consequences such as burglary in the first or second degree (§§ 459, 460, subds. (a), (b)), attempting to dissuade or prevent a victim or witness to a crime from reporting it to the police (§ 136.1, subd. (b)(1)), or accessory after the fact (§ 32) based on others providing him the drugs as long as the imposed sentence was less than a year. While "[t]he court does not decide if the prosecution would have offered a different bargain[,] it considers evidence that would have caused the defendant to expect or hope a different bargain would or could have been negotiated." (*People v. Martinez* (2013) 57 Cal.4th 555, 567.) Rombeau failed to provide any evidence to the superior court in this regard.

was arrested, and evidence of drug sale transactions on his phone. The case against him was strong and his recidivism made him a poor candidate for leniency. (See *Espinoza*, *supra*, 14 Cal.5th at p. 324 [noting in contrast that "a defendant without an extensive criminal record may persuasively contend that the prosecutor might have been willing to offer an alternative plea without immigration consequences"].)

This does not mean, however, that Rombeau's only option was to accept a plea with immigration consequences. He could instead "have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial." (See *Lee v. United States* (2017) 582 U.S. 357, 367-368 [137 S.Ct. 1958, 198 L.Ed.2d 476].) As the United States Supreme Court noted, "common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. [Citation.] When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." (*Id.* at p. 367.)

Rombeau declared repeatedly that, "Had I known the truth, I would not have accept the plea . . . and would have fought this case at all costs in order to preserve my ability to remain in the United States." Given Rombeau's ties to the United States and unfamiliarity with France, we find this statement persuasive. Thus, on balance, the record supports a reasonable probability that Rombeau would have rejected the 2014 felony plea if it had not been for the errors affecting his ability to meaningfully understand and defend against its immigration consequences—

even if his only other alternative was to throw a "Hail Mary" at trial.  (See *People v. Soto, supra*, 79 Cal.App.5th at p. 610; *People v. Rodriguez, supra*, 68 Cal.App.5th at pp. 311-312, 324.)

## DISPOSITION

The order denying the motion to vacate Rombeau's conviction is reversed, and the matter is remanded with instructions to grant the motion and vacate the 2014 felony plea in Los Angeles Superior Court case No. LA076805.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

24